**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD CHRISMAN,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br>DAVID SMITH, M.D.; M. SHERIDAN; M.X. McCURTY; DR. RICHARDS; R.N. MARQUEZ; and C/O ESCALANTE,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 08cv975-IEG(LSP)<br><br>Order Granting in Part and Denying in Part Motion to Dismiss Second Amended Complaint |

Plaintiff Ronald Chrisman, a state prisoner proceeding by and through counsel, has filed a second amended complaint ("SAC") alleging Defendants violated his rights under the Eighth and Fourteenth Amendments by delaying and providing inadequate medical treatment. Defendants Smith, Sheridan, McCurty, Escalante, and Marquez now move to dismiss. Plaintiff has filed an opposition and Defendants have filed a reply. The Court found the motion appropriate for submission on the papers and without oral argument, and the January 11, 2010 hearing date was previously vacated. For the reasons set forth herein, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.

## *Factual Background*

At approximately 8:30 p.m. on September 26, 2006, while he was incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), Plaintiff was brutally attacked by a fellow inmate. [SAC ¶ 15.] Plaintiff suffered two blackened eyes, a broken nose, and a broken fifth finger

1  on his left hand. [Id.] After the incident, Correctional Officer McCurty escorted Plaintiff to the
2  medical clinic, where he was seen by Medical Technical Assistant Sheridan. [SAC ¶ 16.] Plaintiff
3  complained to both Sheridan and McCurty that his finger was extremely swollen, immovable, very
4  painful, and obviously fractured. [SAC ¶ 17.] Plaintiff also complained to Sheridan and McCurty
5  regarding his nose, which was caved-in, lacerated, bleeding, and effecting Plaintiff's breathing.
6  Finally, Plaintiff complained of extreme pain from a large bump on the back of his head. [Id.]
7        Despite Plaintiff's repeated complaints of severe pain, his obvious injuries, and his request
8  for immediate medical attention, Sheridan and McCurty failed to treat Plaintiff's injuries. [SAC
9  ¶ 18.] Instead, after Sheridan completed the necessary medical report, Sheridan told Plaintiff to
10 return to his cell and to sign up for sick call, a process Sheridan and McCurty knew could result in a
11 one or two week delay. [SAC ¶¶ 19-20.] Plaintiff then requested to go to the infirmary, but
12 Sheridan and McCurty refused to take him to the infirmary; instead, Sheridan and McCurty forced
13 Plaintiff to return to his building without medical care and in extreme pain. [SAC ¶ 21-22.] Upon
14 his return to his housing unit, Plaintiff was sent to lock down and received no medical treatment.
15 [SAC ¶ 27.]
16       The following day, September 27, 2006, Plaintiff received a pass to go to the medical clinic,
17 where he saw Correctional Officer Escalante. [SAC ¶ 28.] Plaintiff told Escalante he was in
18 extreme pain from his broken nose and finger, and requested medical attention. [Id.] Escalante
19 refused Plaintiff's request for medical attention and told Plaintiff to return the following day. [Id.]
20       On September 28, 2006, Plaintiff returned to the medical clinic where he saw nurse
21 Marquez. [SAC ¶ 29.] Plaintiff told Marquez he was in severe pain from his fractured left finger,
22 and requested he be given medications and x-rays for his finger and nose. [SAC ¶ 30.] Plaintiff
23 alleges the severity of his injuries was obvious, as his finger was extremely swollen, bruised, and
24 immovable and his nose was caved-in on one side and bruised. [SAC ¶ 31.] Plaintiff was seen by
25 Dr. Richards. [SAC ¶ 32.] Although Plaintiff told Dr. Richards about his pain and injuries from
26 the assault two days prior, and despite Plaintiff's obvious need for immediate medical care, Dr.
27 Richards refused to act immediately. [SAC ¶ 32-33.] Dr. Richards told plaintiff he ordered x-rays
28 and pain medication, but did not immediately provide either. [SAC ¶ 35.] Marquez also told

1  Plaintiff x-rays and pain medication had been ordered, but did not render any immediate care.
2  [SAC ¶ 36-37.]  Plaintiff alleges Dr. Richards and Marquez both knew Plaintiff would not receive
3  pain medication for at least three days, but refused to provide him immediate care.  [SAC ¶ 37.]
4  	Plaintiff finally received x-rays of his finger on October 5, 2006, eight days after the assault,
5  but did not receive x-rays on his nose.  [SAC ¶ 38.]  In addition, despite his numerous requests for
6  pain relief, he received no pain medication.  [SAC ¶ 39.]
7  	On October 30, 2006, 35 days after the injury, Dr. Smith performed surgery on Plaintiff's
8  fractured left fifth finger, inserting two steel surgical pins into the dislocated joint.  [SAC ¶ 43 and
9  45.]  In addition, Dr. Smith supervised another physician's reconstructive nasal septal surgery on
10 September 20, 2007, ten months after the injury.  [SAC ¶ 44.]  Plaintiff alleges Dr. Smith
11 deliberately delayed Plaintiff's surgeries, care and treatment.  [SAC ¶ 45.]  Because of the delay in
12 performing surgery, Plaintiff's left fifth finger became deformed and unable to bend.  [SAC ¶ 46.]
13 Plaintiff alleges Dr. Smith failed to monitor his condition and treat his finger after the surgery,
14 resulting in continued pain and suffering, and further resulting in Plaintiff's finger eventually being
15 amputated on July 31, 2007.  [SAC ¶ 47-48.]
16 	Plaintiff alleges each of the Defendants were deliberately indifferent to his need for medical
17 care in violation of his rights under the Eighth Amendment.  [SAC ¶ 55(C).]  Plaintiff also alleges
18 Defendants' actions violated his substantive due process rights and right to equal protection under
19 the Fourteenth Amendment.  [SAC ¶ 55(A) and (B).]
20 	***Procedural History***
21 	Plaintiff, proceeding *pro se*, originally filed a complaint against Defendants on November 2,
22 2007, alleging the Defendants' actions violated his rights under the Eighth Amendment.  [Case No.
23 07cv2101-IEG(LSP).]  Defendants moved to dismiss the complaint based upon Plaintiff's failure to
24 exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C.
25 § 1997e(a).  [Id., Doc. No. 21.]  By the time of the hearing on Defendants' motion, however,
26 Plaintiff was no longer in custody and thus no longer required by § 1997e(a) to exhaust his
27 administrative remedies in order to bring an action against prison officials.  Thus, the Court granted
28 Defendants' motion to dismiss, and dismissed Plaintiff's action without prejudice to refiling.  [Id.,

1  Doc. No. 23.]

2  Plaintiff re-filed his complaint on June 2, 2008. [Doc. No. 1.] Because Plaintiff's complaint was identical to the one he previously filed and served, counsel for Defendants agreed to accept service on behalf of Defendants.[1]  [Doc. No. 4., p. 2.]

Defendants Smith, McCurty, Koludrovic, Marquez, Sheridan, and Escalante moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. By order filed November 12, 2008, the Court granted in part and denied in part Defendants' motion. [Doc. No. 17.] The Court dismissed Plaintiff's claims against Defendants Smith, McCurty, Koludrovic and Marquez, with leave to amend; the Court denied the motion to dismiss Plaintiff's Eighth Amendment claims against Defendants Sheridan and Escalante.

Plaintiff filed a First Amended Complaint on January 15, 2009, realleging claims against Defendants Smith, Sheridan, McCurty, Escalante, Richards, and Marquez. Plaintiff did not reallege claims against Koludrovic. [Doc. No. 21.] Defendants moved to dismiss the First Amended Complaint. [Doc. No. 43.] Instead of responding to Defendants' motion, Plaintiff requested time to prepare and file a Second Amended Complaint. [Doc. No. 45.] On September 8, 2009, counsel entered an appearance in this case on Plaintiff's behalf.

On November 11, 2009, Plaintiff filed the SAC. [Doc. No. 54.] Although Defendants Koludrovic and Navamani are named in the caption of the SAC, no claims are asserted against these Defendants. Plaintiff once again alleges that Defendants Smith, Sheridan, McCurty, Escalante, Richards, and Marquez violated his rights under the Eighth Amendment. Plaintiff further alleges these Defendants' actions violated his right to liberty under the substantive components of the Due Process Clause and his right to fair and equal treatment under the Equal Protection Clause. Defendants now move to dismiss the SAC.

---

[1] Plaintiff has never served two Defendants named in the SAC – Defendant Dr. Richards and Defendant Navamani. Although Navamani was named in earlier complaints, and his name is included in the caption of the SAC, Plaintiff no longer asserts any claim against Navamani. The SAC does, however, contain allegations against Dr. Richards. Because Plaintiff did not serve Dr. Richards with the original complaint in Case No. 07cv2101-IEG(LSP), the Attorney General's Office could not accept service of the complaint in this case on Dr. Richards' behalf.

### *Legal Standard*

A motion to dismiss under Federal Rule of Civil Procedure 12(b) (6) "tests the legal sufficiency of a claim" *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [typically] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [citation omitted]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

Dismissal also can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal,* 556 U.S. __, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at __, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a compliant, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should

assume their veracity and then decide whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at __, 129 S.Ct. at 1950.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully. *Id.* at 1949. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*; *Twombly,* 550 U.S. at 570 (when a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed.").

## *Discussion*

Defendants argue (1) Plaintiff's SAC fails to state a claim against Defendants Smith, McCurty, and Marquez under the Eighth Amendment; (2) Plaintiff's SAC fails to state a claim under the Due Process Clause of the Fourteenth Amendment because Plaintiff does not allege facts showing Defendants acted in a manner which "shocks the conscience" and because the claims instead arise under the explicit textual source of the protections provided by the Eighth Amendment; (3) Plaintiff's SAC fails to state a claim under the Equal Protection Clause of the Fourteenth Amendment because Plaintiff fails to allege any Defendant acted with an intent or purpose to discriminate based upon Plaintiff's membership in a protected class; and (4) Plaintiff's SAC must be dismissed to the extent it sues Defendants in their official capacity because they are immune from suit under the Eleventh Amendment.

*1. Eighth Amendment Deliberate Indifference Claim*

Defendants Smith, McCurty, and Marquez[2] argue Plaintiff's claim under the Eighth Amendment must be dismissed because the SAC fails to allege these Defendants acted with deliberate indifference to Plaintiff's serious medical needs. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless

---

[2] As previously noted, the Court found Plaintiff's original complaint stated a claim under the Eighth Amendment against Defendants Sheridan and Escalante. Those Defendants do not argue the SAC fails to state a claim under the Eighth Amendment against them.

(1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). Before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995).

A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Where a prisoner alleges delay in receiving medical treatment, he must show that the delay led to further harm. *Id.* at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

A.  Claim as to Dr. Smith

In his SAC, Plaintiff alleges Dr. Smith performed the first surgery on Plaintiff's left fifth finger on October 30, 2006, 35 days after Plaintiff suffered the severe injury. [SAC ¶ 45.] Plaintiff further alleges Dr. Smith performed a second surgery on the finger on January 29, 2007, leaving the finger deformed and unable to bend. [SAC ¶ 46.] Finally, Plaintiff alleges Dr. Smith supervised Dr. Goodman's reconstructive nasal septal surgery on September 20, 2007, ten months after the injury. [SAC ¶ 44.] These are the only facts Plaintiff alleges with regard to Dr. Smith's care for his

1  injuries.

2  Some of Plaintiff's remaining allegations with regard to Dr. Smith are conclusory (i.e.
3  "SMITH deliberately delayed Plaintiff's surgeries, care and treatment" [SAC ¶ 45] and "SMITH
4  failed to monitor plaintiff's condition and failed to treat and care for PLAINTIFF" [SAC ¶ 48]).
5  The remainder of Plaintiff's allegations are mere legal conclusions unsupported by any facts (i.e.
6  Defendants' "lack of care and deliberate failures ... to care for PLAINTIFF's serious and severe
7  injuries" resulted in harm  [SAC ¶ 46]; all Defendants "intentionally or with deliberate indifference
8  to PLAINTIFF's serious injuries requiring medical treatment refused to arrange for medical
9  treatment" [SAC ¶ 52]; "SMITH deliberately delayed Plaintiff's surgeries, care and treatment"
10  causing deterioration of Plaintiff's condition and requiring his finger to be partially amputated
11  [SAC ¶ 45]).

12  As the Supreme Court explained in *Iqbal*, "[w]hile legal conclusions can provide the
13  framework of a complaint, they must be supported by factual allegations." 129 S.Ct. at 1950.
14  Plaintiff alleges no facts connecting the delay in his initial finger surgery with any act or omission
15  on the part of Dr. Smith.  Plaintiff alleges no facts demonstrating Dr. Smith had any role in
16  scheduling his initial finger surgery, or had any say regarding when that surgery would take place.
17  In short, Plaintiff does not allege any facts supporting his conclusory allegation that Dr. Smith
18  "intentionally or with deliberate indifference ... refused to arrange for medical treatment."  [SAC
19  ¶ 52.]  The Court GRANTS Defendant Dr. Smith's motion to dismiss Plaintiff's Eighth
20  Amendment claim.

21  B.  Claim as to McCurty

22  In his SAC, Plaintiff alleges Correctional Officer McCurty escorted him to the medical
23  clinic after he was attacked on September 26, 2006. [SAC ¶ 16.]  Plaintiff alleges he told McCurty
24  of his severe pain from his left fifth finger and nose injuries, and made it clear to McCurty that he
25  was in extreme pain and needed immediate medical attention.  [SAC ¶ 18.]  Plaintiff alleges that in
26  response to Plaintiff's complaints of pain McCurty "chuckled."  When Plaintiff told McCurty "hey
27  my finger and nose are broken," McCurty replied "it looks like it."  [Id.]  After MTA Sheridan
28  examined Plaintiff and denied Plaintiff's request for immediate medical care, Plaintiff alleges

1  McCurty refused to take him to the infirmary and became "impatient and upset" with him. [SAC
2  ¶¶ 20-22.] Plaintiff further alleges "McCurty intentionally and unjustifiably refused to take
3  reasonable action to summon medical care for the plaintiff and thus [was] deliberately indifferent to
4  his serious medical needs." [SAC ¶ 24.]
5      Plaintiff does not present any argument in his opposition to the current motion as to how the
6  allegations of the SAC state a claim against McCurty under the Eighth Amendment. To the extent
7  Plaintiff alleges McCurty become impatient or "chuckled," such conduct does not rise to the level
8  of a constitutional violation. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (verbal harassment
9  generally does not violate the Eighth Amendment). Furthermore, as pointed out by the Court in its
10 order dismissing Plaintiff's original complaint, McCurty took Plaintiff to the medical clinic
11 immediately after the incident, where Plaintiff was examined by a Medical Technical Assistant.
12 [SAC ¶ 16.] Plaintiff's conclusory allegations that McCurty "intentionally and unjustifiably
13 refused to take reasonable action to summon medical care" and that McCurty was "deliberately
14 indifferent to his serous medical needs" are pure legal conclusions unsupported by any supporting
15 facts. The Court GRANTS Defendant McCurty's motion to dismiss Plaintiff's Eighth Amendment
16 claim.
17      C.  Claim as to Marquez
18      In his SAC, Plaintiff alleges that when he returned to the clinic two days after the incident,
19 Marquez took his vital statistics and answered questions [SAC ¶ 29], took notes when Plaintiff told
20 her the details of his condition [SAC ¶ 30], and told Plaintiff (after he was examined by Dr.
21 Richards) that x-rays and pain medication were ordered and he would get them [SAC ¶ 36.]
22 Plaintiff further alleges Marquez "knew plaintiff was in extreme pain and that he would not receive
23 pain medication for at least three days" [SAC ¶ 37] but "purposefully ignored and failed to respond
24 to plaintiff's medical needs" and instead "sat idly by while plaintiff suffered in pain" which
25 "resulted in the unnecessary and wanton infliction of pain and resulted in further significant injury"
26 [SAC ¶ 41].
27      Construed in the light most favorable to Plaintiff, the Court finds these allegations state a
28 plausible claim against Defendant Marquez. The Court assumes at this stage of the proceedings

that Plaintiff's fractured left fifth finger and broken nose were both serious medical needs. *See Jett v. Penner*, 439 F.3d 1091, 1096 n.1 (9th Cir. 2006) (noting that the parties did not dispute the plaintiff's fractured thumb was a serious medical need). If, as Plaintiff alleges, defendant Marquez knew Plaintiff was in extreme pain from his injuries but purposefully failed or refused to promptly provide pain medications for the purpose of wantonly inflicting pain, Plaintiff could state a claim for deliberate indifference under the Eighth Amendment. The Court DENIES Defendant Marquez's motion to dismiss Plaintiff's Eighth Amendment claim.

*2.  Fourteenth Amendment Due Process Claim*

In addition to his Eighth Amendment deliberate indifference claim, Plaintiff argues the Defendants' conduct violated his substantive due process rights under the Fourteenth Amendment. "If a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)); *Albright v. Oliver*, 510 U.S. 266, 272-73 (1994) (noting that when a broad "due process" violation is alleged, but a particular amendment "provides an explicit textual source of constitutional protection," that the standards of the particular amendment, rather than the more generalized notion of substantive due process, must guide the court's analysis).

Here, Plaintiff's claim that Defendants denied him prompt and adequate medical care, while he was a state inmate, fall squarely within the Eighth Amendment's protection against cruel and unusual punishment. Thus, the Court must evaluate Plaintiff's claims under the standards applicable to Eighth Amendment claims and Plaintiff cannot proceed under the broad protections of the due process clause. The Court GRANTS Defendants' motion to dismiss Plaintiff's Fourteenth Amendment substantive due process claim.

*3.  Fourteenth Amendment Equal Protection Claim*

Finally, Plaintiff alleges the Defendants' actions violated his right to fair and equal treatment under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment "ensures that 'all persons similarly situated should be treated

1  alike'." *Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 993 (9th Cir. 2007) (quoting *City of*
2  *Cleburne v. Celburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). In order to state a claim under
3  the Equal Protection Clause, a plaintiff must show "'the defendants acted with an intent or purpose
4  to discriminate against the plaintiff based upon membership in a protected class'." *Lee v. City of*
5  *Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)(quoting *Barren v. Harrington*, 152 F.3d 1193, 1194
6  (9th Cir. 1998)).

7  Here, Plaintiff does not allege he is a member of a protected class, or that Defendants
8  intentionally discriminated against him on account of his membership in that class. Therefore, the
9  Court GRANTS Defendants' motion to dismiss Plaintiff's Fourteenth Amendment equal protection
10 claim.

11 *4. Eleventh Amendment Immunity*

12 Finally, Plaintiff's SAC purports to sue each of the Defendants in both their individual and
13 official capacities. It is well-settled that "a suit against a state official in his or her official capacity
14 is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan*
15 *Dept. of State Police*, 491 U.S. 58, 71 (1989). Such claims are barred by the Eleventh Amendment
16 sovereign immunity. *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2002).
17 Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiff's claims against them in
18 their official capacity.

### *Conclusion*

For the reasons set forth herein, the Court

1. GRANTS Defendants Smith and McCurty's motion to dismiss Plaintiff's claims under the Eighth Amendment;
2. DENIES Defendant Marquez's motion to dismiss Plaintiff's claims under the Eighth Amendment;
3. GRANTS Defendants' motion to dismiss Plaintiff's substantive due process and equal protection claims under the Fourteenth Amendment; and
4. GRANTS Defendants' motion to dismiss Plaintiff's claims against them in their official capacities.

1  Because Plaintiff has previously been advised of the deficiencies of his pleadings and afforded an
2  opportunity to amend, the Court dismisses Plaintiff's claims against Defendants Smith and
3  McCurty with prejudice and without further leave to amend.  Defendants Sheridan, Escalante, and
4  Marquez are ordered to file an Answer to the SAC within ten (10) days after the filing of this Order.
5  Furthermore, the Court hereby orders Plaintiff to show cause in writing, within ten (10) days
6  of the filing of this Order, why Plaintiff's claims against Defendant Dr. Richards should not be
7  dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**.

**DATED:  February 5, 2010**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**