# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CHRISMAN, <br><br> Plaintiff, <br><br> vs. <br><br> DAVID SMITH, M.D.; M. SHERIDAN; M.X. McCURTY; DR. RICHARDS; R.N. MARQUEZ and C/O ESCALANTE, <br><br> Defendants. | CASE NO. 08cv0975 - IEG (WVG) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> [Doc. No. 70] |

Presently before the Court is a motion for summary judgment brought by Defendants M. Sheridan, N. Marquez, and G. Escalante ("Defendants") pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, a former state inmate, asserts an Eighth Amendment deliberate indifference claim under 42 U.S.C. § 1983, stemming from alleged inadequate and delayed medical care for injuries he sustained when he was attacked by another inmate. For the reasons discussed below, the Court **GRANTS** Defendants' motion for summary judgment.

## BACKGROUND

On September 26, 2006, Plaintiff, then an inmate at Richard J. Donovan Correctional Facility ("RJD"), was attacked by another inmate. (Second Amended Complaint ("SAC") ¶ 14.) A corrections officer escorted Plaintiff to the Psychiatric Services Unit, and a Medical Technical Assistant ("MTA") examined him. (Declaration of K. Sheriff (Sheriff Decl.) ¶ 3.) During the

1  examination, the MTA observed that Plaintiff had a bloody nose and that a fingernail on his left
2  hand was bleeding. (Sheriff Decl. ¶ 4; Ex. 1)  Pursuant to institution policy, the MTA documented
3  his findings in a Medical Report of Injury or Unusual Occurrence Form. (Sheriff Decl. ¶ 4; Ex. 1)
4  Pursuant to institution policy and custom and practice, the MTA called the attending nurse, who
5  advised the MTA that Plaintiff did not have to be seen at the Triage Treatment Area ("TTA") and
6  could be returned to his cell. (Sheriff Decl. ¶ 5.)  A correctional officer escorted Plaintiff back to
7  his cell without incident. (Id.)
8      On September 27, 2006, Plaintiff received a pass and went to the Facility One Clinic
9  ("Clinic"). Plaintiff advised the clinic officer, Defendant G. Escalante, of his injuries. Escalante
10 told him to "come back tomorrow." (Chrisman Decl. ¶ 12.)
11     The next day, September 28, 2006, Plaintiff filled out a Health Care Services Request
12 Form requesting treatment for sciatica and a broken finger. (See Ex. 2.) At about 1:00 p.m., the
13 attending nurse, Defendant N. Marquez, examined him. During the examination, Plaintiff reported
14 a constant throbbing pain in his left fifth finger, which was tender, swollen and appeared bruised,
15 and lower back pain, with related muscles spasms, numbness and tingling to his right lower
16 extremities. (Declaration of N. Marquez (Marquez Decl.) ¶ 3; see Ex. 3.) Marquez took Plaintiff's
17 vital signs and completed an M.D. referral, checking the box marked "Routine," which indicated
18 her opinion that the reported injuries were non-emergent. Marquez also requested x-rays
19 consistent with orders given to her that afternoon by the attending physician, and she then referred
20 Plaintiff for a follow-up visit in the Physician's Clinic in two weeks. (Marquez Decl. ¶ 6.) She
21 also gave Plaintiff a bottle of Ibuprofen 200 mg for pain before he left the clinic and advised him to
22 submit another Health Care Services Request Form should his symptoms worsen. (Id.) Marquez
23 had no further contact with Plaintiff. (Id. ¶ 7.)
24     Plaintiff's symptoms worsened and, ultimately, he suffered through two surgeries, severe
25 nerve damage and amputation of his finger. (Chrisman Decl. ¶ 23.) This action followed. (Doc.
26 No. 1.) The case is presently before the Court on a motion for summary judgment brought by
27 Defendants Sheridan, Escalante, and Marquez. (Doc. No. 70.) Plaintiff filed a response in
28 opposition and Defendants filed a reply. (Doc. Nos. 72, 74.)

# DISCUSSION

## I. Legal Standard for a Motion for Summary Judgment

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." Celotex, 477 U.S. at 323. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. Id. at 322. Where the moving party does not have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways: "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000). To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000). The non-moving party may not rely on the pleadings alone, but must present specific facts creating a genuine issue of material fact through affidavits, depositions, or answers to interrogatories. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. Id.; Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008). Moreover, the court is not required "'to scour the record in search of a genuine issue of triable fact,'" Keenan v.

1  Allan, 91 F.3d 1275, 1279 (9th Cir.1996) (citations omitted), but rather "may limit its review to the
2  documents submitted for purposes of summary judgment and those parts of the record specifically
3  referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir.
4  2001).

5  **II.     Analysis**

6      **A.     Legal Standard for Deliberate Indifference to a Prisoner's Serious Medical Needs in Violation of the Eighth Amendment**

7        The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton
8  infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428
9  U.S. 153, 173 (1976)). This principle "establish[ed] the government's obligation to provide
10 medical care for those whom it is punishing by incarceration." Id. The Supreme Court has noted
11 that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to
12 do so, those needs will not be met." Id.; West v. Atkins, 487 U.S. 42, 54-55 (1988).

13       Prison officials violate a prisoner's Eighth Amendment right to be free from cruel and
14 unusual punishment if they are deliberately indifferent to the prisoner's serious medical needs.
15 Estelle v. Gamble, 429 U.S. 97, 106 (1976); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.
16 1989). "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or
17 injury states a cause of action under § 1983." Estelle, 429 U.S. at 105. "This is true whether the
18 indifference is manifested by prison doctors in their response to the prisoner's needs, or by prison
19 guards in intentionally denying or delaying access to medical care or intentionally interfering with
20 the treatment once prescribed." Id. at 104-05 (footnotes omitted).

21       A "serious" medical need exists if the failure to treat a prisoner's condition could result in
22 further significant injury or the "unnecessary and wanton infliction of pain." Id. at 104. Thus, the
23 "existence of an injury that a reasonable doctor or patient would find important and worthy of
24 comment or treatment; the presence of a medical condition that significantly affects an individual's
25 daily activities; or the existence of chronic and substantial pain are examples of indications that a
26 prisoner has a 'serious' need for medical treatment." McGuckin v. Smith, 974 F.2d 1050, 1059-60
27 (9th Cir. 1992), overrruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th
28 Cir. 1997) (en banc); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000); see also Doty v.

County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994) ("serious" medical conditions are those a reasonable doctor would think worthy of comment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain).

"In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 302 (1991). The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. Estelle, 429 U.S. at 106; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard.") (citing Hallett v. Morgan, 296 F.3d 732, 1204 (9th Cir. 2002); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

The court must focus on the seriousness of the prisoner's medical needs and the nature of the defendants' response to those needs. See McGuckin, 974 F.2d at 1059. Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay or denial was harmful. See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985); Hunt, 865 F.2d at 200 ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation."); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable."). While the harm caused by delay need not necessarily be "substantial," McGuckin, 974 F.2d at 1060 & n.2; see also Wood v. Housewright, 900 F.2d at 1336, 1339-40 (9th Cir. 1990) (Reinhardt, J., dissenting), the Eighth Amendment is violated if "delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case," Hallett, 287 F.3d at 1206, and "a finding that the inmate was seriously harmed by the defendant's action or inaction tends to provide additional support to a claim that the defendant was 'deliberately indifferent' to the prisoner's medical needs." McGuckin, 974 F.2d at 1060.

1    Regarding inaction or delay of treatment, "the fact that an individual sat idly by as another human being was seriously injured despite the defendant's ability to prevent the injury is a strong indicium of callousness and deliberate indifference to the prisoner's suffering." Id. (citing Estelle, 429 U.S. at 106). However, a finding that the defendants' neglect of a prisoner's condition was an "isolated occurrence," Wood, 900 F.2d at 1334, or an "isolated exception," Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986), to the defendants' overall course of treatment of the prisoner ordinarily militates against a finding of deliberate indifference. McGuckin, 974 F.2d at 1060. Further, prison officials who "ignore[] the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference." Wakefield, 177 F.3d at 1165; Estelle, 429 U.S. at 105; Hamilton v. Endell, 981 F.2d 1062, 1066-67 (9th Cir. 1992).

**B.   Whether Defendants Acted with Deliberate Indifference to Plaintiff's Serious Medical Needs**

1.   Defendant M. Sheridan

Defendants contend that Plaintiff is mistaken in identifying Defendant Sheridan as the Medical Technical Assistant ("MTA") who inspected him on September 26, 2006. In support, Defendants have submitted the declarations of M. Sheridan and K. Sheriff, along with an exhibit (Def.'s Ex. 1). Sheridan maintains that he was not an MTA in September 2006 and that he had no contact with Plaintiff on September 26, 2006. See Sheridan Decl. ¶¶ 3-4. A named but as yet unserved Defendant, K. Sheriff, states that he treated Plaintiff on September 26, 2006, see Sheriff Decl. ¶¶ 3-4, and his declaration is corroborated by a Medical Report of Injury or Unusual Occurrence from September 26, 2006 completed by K. Sheriff, see Def.'s Ex. 1. Sheriff's declaration demonstrates that on September 26, 2006, about 8:30 p.m., Plaintiff entered the Psychiatric Services Unit after reporting he had been attacked by another inmate. Sheriff Decl. ¶ 3. Sheriff observed and documented that Plaintiff had a bloody nose and hand. Sheriff Decl. ¶ 3; Def.'s Ex. 1. Sheriff then consulted the attending nurse at the Treatment Triage Area ("TTA"), and she advised him that Plaintiff did not need to be seen in the TTA and could be returned to his cell. Sheriff Decl. ¶ 5. Sheriff bandaged Plaintiff's finger and had him escorted back to his cell. Id.

Based upon the foregoing submissions, Defendants have met their burden of showing that Defendant Sheridan was not present on September 26, 2006 and therefore could not have been

- 6 -                                                                08cv975

deliberately indifferent to Plaintiff's serious medical needs. Plaintiff has not introduced any evidence to rebut Defendant's proof and demonstrate there is a genuine issue of material fact; he has merely repeated his previous allegations.[1] See Pl.'s Opp'n at 3; Chrisman Decl. ¶¶ 5-11. Because there is no genuine issue as to whether Defendant Sheridan participated in the alleged constitutional violation, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claim against Sheridan.

### 3. Defendant G. Escalante

On September 27, 2006, Plaintiff received a pass and went to the Facility One Clinic ("Clinic") seeking treatment for injuries he sustained during the assault the night before. Chrisman Decl. ¶ 12. There, he encountered Defendant Escalante. Id. Plaintiff alleges that although he had two black eyes, a swollen finger and a large gash on his nose, Escalante told him to "come back tomorrow." See Chrisman Decl. ¶ 28. Escalante acknowledges having worked as a clinic officer on September 27, 2006, but he has no specific recollection of an encounter with Plaintiff that day. See Escalante Decl. ¶ 5. Escalante maintains he followed institution policy at all times, and that pursuant to institution policy, inmates were not permitted into the Clinic unless they had an objective and obvious injury requiring immediate or emergency medical care, had completed a Health Care Services Request Form, or scheduled an appointment with a health care provider in the Clinic. Id. ¶ 5. Escalante has never harbored ill will toward Plaintiff or intended to cause him harm. Id. ¶ 8. There does not appear to be any record of the encounter or an inmate grievance regarding Escalante's behavior.

Based on the record before the Court, no reasonable juror could find that on September 27, 2006, Escalante was aware of facts suggesting a delay in treatment could result in "further

---

[1] Plaintiff alleges that on September 26, 2006, he was violently and viciously attacked by another inmate, leaving his face disfigured, and his face and hand bloody. Chrisman Decl. ¶ 4. A correctional officer escorted Plaintiff to the clinic. Id. ¶ 5. There, Plaintiff contends Medical Technical Assistant ("MTA") Sheridan inspected him for injuries to determine if he was in need of immediate treatment. Id. During the inspection, Plaintiff complained of extreme pain and that his finger was swollen, immovable, very painful, and obviously fractured. Id. ¶ 6. At one point during the inspection, the correctional officer and the MTA chuckled. Id. ¶ 7. Plaintiff responded by stating that his face and nose are broken, and the correctional officer responded, "it looks like it." Id. Following the inspection, the MTA told Plainitff he could go back to his cell and that he could sign up for sick call. According to Plaintiff, the procedure for sick call can take up to two weeks. Id. ¶ 9. Plaintiff requested to go to the infirmary, but the MTA denied permission. Id. ¶ 10.

1  significant injury" to Plaintiff.  Estelle, 429 U.S. at 104.  The facts indicate Plaintiff may have had
2  a difference of opinion as to the urgency of his injuries, but a difference of opinion does not
3  amount to deliberate indifference.  Sanchez v. Vild, 891 F.2d 240 (9th Cir. 1989); Franklin v. State
4  of Or., State Welfare Division, 662 F.2d 1337, 1344 (9th Cir. 1981).  At most, Escalante's decision
5  not to admit Plaintiff into the Clinic is an "isolated occurrence," see Wood, 900 F.2d at 1334, and
6  Plaintiff returned to the Clinic and received treatment the next day, see generally Marquez Decl.;
7  Def.'s Exs. 2-3.  Accordingly, any delay in treatment did not cause substantial harm  See Wood,
8  900 F.2d at 1334 (delay of several days in receiving pain medication for a broken shoulder did not
9  amount to a constitutional violation).  Because there is no genuine issue as to whether Defendant
10 Escalante was deliberately indifferent to Plaintiff's serious medical needs, the Court **DISMISSES**
11 **WITH PREJUDICE** Plaintiff's claim against Escalante.

    2. Defendant N. Marquez

13  Defendants argue that Defendant Marquez was not deliberately indifferent to Plaintiff's
14 serious medical needs.  Def.'s Mot. at 6-8.  In support, Defendants have submitted the declaration
15 of N. Marquez, along with two exhibits (Def.'s Ex. 2-3).  Marquez states that on September 26,
16 2006, she examined Plaintiff in the Clinic while working as an attending nurse.  Marquez Decl. ¶
17 3.  Plainitff had completed a Health Care Services Request Form requesting medical care for
18 "sciatica and a broken finger."  Id. ¶ 4; Def.'s Ex. 2.  During the examination, Plaintiff reported a
19 constant throbbing pain in his left fifth finger, which was tender, swollen and appeared bruised,
20 and lower back pain, with related muscles spasms, numbness and tingling to his right lower
21 extremities.  Id. ¶ 5; Def.'s Ex. 3.  Plaintiff reported he had fallen from his bunk two days earlier
22 and hit the stool.  Id.  Plaintiff also complained of chronic low-back pain since 1989.  Id.  Marquez
23 took Plaintiff's vital signs and completed an M.D. referral, checking the box marked "Routine,"
24 which signified her opinion that the reported injuries were non-emergent.  Id. ¶ 6.  It appears that
25 Plaintiff was also examined by Dr. Richards that afternoon as well, and Dr. Richards told Plaintiff
26 he ordered x-rays and prescribed pain medication, and to come back in two weeks.  SAC ¶ 35.  Dr.
27 Richards also advised Plaintiff to see the nurse before he left the clinic.  Id.  Before Plaintiff left
28 the clinic, Marquez requested x-rays consistent with Dr. Richards' orders and referred Plaintiff for

a follow-up visit in the Physician's Clinic in two weeks. Marquez Decl. ¶ 6. She also advised Plaintiff to submit a Health Care Services Request Form should his symptoms worsen and gave him a bottle of Ibuprofen 200 mg for his pain before he left the clinic. Id. Marquez declares that she never harbored any ill will against Plaintiff or intended to cause him harm. Id. ¶¶ 8-9. In substance, Plaintiff's account of his examination is the same as that of Marquez, except that Plaintiff emphasizes Marquez did not heed his repeated pleas for additional treatment. See generally Chrisman Decl.

Based on the record before the Court, no reasonable juror could find that on September 28, 2006, Marquez was deliberately indifferent to Plaintiff's serious medical needs. On the contrary, Marquez took notes and examined Plaintiff, ordered x-rays as directed by the attending physician, scheduled Plaintiff for a follow-up appointment in two weeks, advised Plaintiff to complete a Health Services Request form should his condition worsen, and gave him pain medication before he left the Clinic. See generally Chrisman Decl.; Marquez Decl. That Marquez did not acquiesce to Plaintiff's repeated requests for additional treatment does not mean that she was deliberately indifferent, Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977), even assuming his injuries resulted from malpractice or even gross negligence, Estelle, 429 U.S. at 106. As much as the Court sympathizes with the fact that Plaintiff sustained permanent damage as a consequence of his medical treatment, it cannot provide relief under § 1983 because there is no genuine dispute as to whether Marquez exhibited deliberate indifference to a serious medical need. Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claim against Marquez.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment and **DISMISSES WITH PREJUDICE** Plaintiff's claims against Defendants Sheridan, Escalante, and Marquez.

**IT IS SO ORDERED.**

**DATED:  December 16, 2010**

_Irma E. Gonzalez_
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**